UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|   |   |
|---|---|
| | x |
| THE INTERCEPT MEDIA, INC.; and RYAN DEVEREAUX, | : |
| | : |
| Plaintiffs, | : |
| | : |
| - against - | : |
| | : |
| NATIONAL PARK SERVICE; and U.S. DEPARTMENT OF THE INTERIOR, | : |
| | : |
| Defendants. | : |
| | x |

Case No. 23-10922

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF FOR
VIOLATION OF THE FREEDOM
OF INFORMATION ACT**

_____

Plaintiffs The Intercept Media, Inc., publisher of *The Intercept*, and Ryan Devereaux, a reporter at *The Intercept* (collectively, "The Intercept"), by and through their undersigned attorneys, bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., for declaratory, injunctive, and other appropriate relief to compel the disclosure and release of documents from the National Park Service ("NPS") and the Department of the Interior ("DOI" and together with NPS, "Defendants"). In support thereof, The Intercept alleges as follows:

## INTRODUCTION

1.      Plaintiff The Intercept Media, Inc., is a non-profit that publishes *The Intercept*, an American news organization based in New York City that provides the public with original, independent journalism concerning the institutions and individuals responsible for shaping our world. Plaintiff Ryan Devereaux is a staff reporter at *The Intercept*.

2.      Through this action, The Intercept seeks to compel Defendants to disclose records about a Yellowstone National Park ranger's controversial January 2022 shooting of a gray wolf that was then part of an NPS research study. The shooting came after a hotly-contested change to Montana law that dramatically increased the number of wolves hunters could kill each year, which

the Center for Biological Diversity has estimated could result in the death of approximately 85% of the wolf population in Montana.

3.      At the time of the killing, relevant rules forbade shooting wolves while they were within the boundaries of Yellowstone National Park, or after 5:59 p.m. According to a Montana Fish, Wildlife and Parks department form documenting the harvest, this shooting occurred at 5:55 p.m. *See* Exhibit B. Other records show it took place roughly 175 feet from the park's border.

4.      The harvested animal was part of the Yellowstone Wolf Project, where it was designated wolf 1233, and at the time it was killed, was wearing a GPS collar.

5.      The 2021-2022 season has come to be known by environmentalists as Yellowstone's deadliest wolf hunt in the park's 151-year history.

6.      The harvest came amid a status review, led by U.S. Fish and Wildlife, to determine whether wolves in the Northern Rockies states of Idaho, Montana, and Wyoming, including those residing in Yellowstone National Park, should be relisted under the Endangered Species Act following significant changes in state wolf management policies in the region.

7.      The controversial kill also came shortly after Montana eliminated a prohibition on the use of radio telemetry equipment to track and harvest wolves. A research paper published in *Conservation Biology* in 2017 observed that the use of radio telemetry to find and target collared animals under study by national parks is a growing problem in the field of wildlife management and specifically cited wolves in Yellowstone National Park as an example location.[1]

8.      Given the timing of the shooting and proximity to Yellowstone's border, the NPS's Office of Professional Responsibility opened an investigation into the incident.

---

[1] *See Conservation Biology,* "Troubling issues at the frontier of animal tracking for conservation and management," December 15, 2016, available at https://socialecology.ca/wp-content/uploads/2022/02/29-Cooke-et-al.-2017-Troubling-issues-at-the-frontier-of-animal-tracking-for-conservation-and-management.pdf.

9.     The investigation revealed that the harvest was done by Brian Helms, a park ranger who had worked for NPS since 1985. Mr. Helms was never charged with any crimes, and has participated in an on-the-record interview about the incident with *The Intercept*, which was included in a wide-ranging story about the incident, published in July 2022. A true and correct copy of the story, which appeared under the headline *Rocky Mountain Massacre: Was Yellowstone's Deadliest Wolf Hunt in 100 Years an Inside Job?*, is attached here as Exhibit A.

10.     Mr. Helms retired from NPS within weeks of the harvest.

11.     How or why he was cleared is almost entirely unknown to the public.

12.     On June 20, 2022, reporter Ryan Devereaux submitted a FOIA Request on behalf of *The Intercept* (the "Request") to Defendants United States Department of the Interior and National Park Service for records related to the investigation. *See* Exhibit B.

13.     In response, NPS produced a 296-page report about the investigation containing two maps. The second map showed two approximate locations of wolf 1233: the first in the park, and the second where he was killed, outside the park, 175 feet north of the first location. According to the records, GPS data had the wolf inside the park at 6 p.m. and reported that he was killed "at or about" 6:15 p.m.—both times outside the legal hunting window.

14.     Mr. Helms told *The Intercept* that after his harvest, he was accused by senior park law enforcement officials of sharing information on the park's collared wolves with hunters outside of the park.

15.     Following this harvest, the Superintendent of Yellowstone National Park sent a letter to Montana's game commission requesting that the prohibition on the use of radio telemetry in wolf hunts be reinstated in the state's wolf hunting and trapping regulations.

16.     Apart from the two maps, and roughly 40 pages of hunting regulations, each and every page of the file produced by NPS pertaining to the details of the Office of Professional Responsibility's investigation—247 pages—was almost entirely redacted by NPS.

17.     The Intercept appealed Defendants' determination that the remaining information was withheld under the exemptions for personnel information and records compiled for law enforcement purposes on October 4, 2022.

18.     Plaintiffs bring this action under FOIA to enjoin the NPS and DOI from continuing to improperly withhold responsive agency records by improperly redacting them. This FOIA action is necessary because NPS and DOI have continued to withhold responsive records since The Intercept made the Request nearly 18 months ago, and since the investigation concluded more than a year ago, constituting constructive denials of the Request.

19.     The Freedom of Information Act "focuses on the citizens' right to be informed about 'what their government is up to,'" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted)."[D]isclosure, not secrecy, is the dominant objective" of FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted).

20.     Through its FOIA Request, The Intercept seeks to shed light on how the investigation determined no wrongdoing, when the only information so far released indicates wolf 1233 was shot outside of permissible hunting hours, and was inside Yellowstone National Park at the time the hunter claims it was killed. It further seeks to bring transparency to the nature of the Office of Professional Responsibility's investigatory process. These are matters of significant public interest and concern, because wolf hunting in Montana is in general is an issue of

extraordinary local and national interest, and because the DOI is currently considering re-listing gray wolves in the Northern Rockies under the Endangered Species Act, in part based on the deadly 2021-2022 hunting season.

## PARTIES

21.     Plaintiff The Intercept Media, Inc. is a not-for-profit American news organization headquartered at 114 5th Avenue, New York, NY 10011. The Intercept Media, Inc. publishes *The Intercept*, an award-winning, nationally recognized news organization with a reputation for holding power to account. *The Intercept*'s in-depth investigations focus on politics, war, surveillance, corruption, the environment, science, technology, criminal justice, and the media.

22.     Plaintiff Ryan Devereaux is an investigative reporter for *The Intercept*. He resides in Tucson, Arizona. In 2020, Mr. Devereaux received the Deadline Club's top prize for feature reporting for "Bodies in the Borderlands," a yearlong investigation into the criminalization of humanitarian aid in the Sonoran Desert, and in 2023 he shared an Edward R. Murrow award for feature reporting for his coverage of Arizona's illegal dumping of shipping containers as an ad hoc border barrier on protected public lands. Before joining *The Intercept*, he worked at Guardian US covering policing in New York City.

23. Defendant Department of the Interior and its sub-agency, Defendant National Park Service, are each an "agency" within the meaning of 5 U.S.C. § 552(f)(1). Defendants have possession of and control over the documents and information requested by The Intercept. **JURISDICTION AND VENUE**

24.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

25.     Venue in the Southern District of New York is proper under 5 U.S.C. §

552(a)(4)(B) because Intercept Media, Inc. has its principal place of business in

New York City. **STATUTORY BACKGROUND**

26.     The Freedom of Information Act provides that any member of the public may request records from a United States agency. Upon receipt of a FOIA request, an agency must determine within 20 business days—or, in "unusual circumstances," by 30 business days—whether it will comply with a request and notify the requestor of its determination and reasoning in writing. 5 U.S.C. §§ 552(a)(6)(A)(i)-B(i). This determination must also timely indicate the scope of the documents the agency intends to produce and the exemptions, if any, that it will apply to withhold responsive documents.

27.     In response to a FOIA request, an agency, after engaging in a reasonable search for responsive records, must disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions. 5 U.S.C. §§ 552(a)(3)(A), (C), (b)(1)-(9).

28.     Upon complaint, a district court can enjoin an agency from withholding records and order production of records improperly withheld. 5 U.S.C. § 552(a)(4)(B).

**FACTUAL BACKGROUND**

29.     The Intercept submitted its FOIA request to Defendants DOI and NPS on June 20, 2022. A true and correct copy of the request is attached here as Exhibit B (the "Request").

30.     The Request seeks records relating to the investigation into the January 30, 2022 shooting of a gray wolf in an area known as Beattie Gulch in Southwest Montana, near Yellowstone National Park. *Id.* The Request noted that "the individual who shot and killed this animal was a National Park Service Employee" and that NPS staff "conducted an investigation into this incident and the conduct of its employee." *Id.* It sought "all files created by the National Park Service in conjunction with this investigation." *Id.*

31.    Attached to the Request was the Wolf Harvest Registration form associated with the January 30, 2022 killing. The Intercept obtained the form through a Montana Public Records Act request to the state's Fish, Wildlife and Parks Department. A true and correct copy of that form is attached here as Exhibit C.

32.    The Intercept did not file a separate expedited processing request, but selected the expedited processing option offered on the NPS's public records portal.

33.    On June 21, 2022, Defendant DOI acknowledged receipt of the Request and assigned it case number DOI-NPS-2022-004441.              A true and correct copy of DOI's acknowledgement letter is attached here as Exhibit D.

34.    In the same letter, DOI denied The Intercept's request for expedited processing. *Id.*

35.    On June 21, 2022, The Intercept filed an appeal of the denial for expedited processing. A true and correct copy of the appeal is attached here as Exhibit E.

36.    Defendants never responded to the expedited processing appeal.

37.    On July 15, 2022, DOI wrote to The Intercept stating that it would grant in part and deny in part the Request. A true and correct copy of the July 15, 2022 letter is attached here as Exhibit F.

38.    With its letter, DOI provided one file, which it said would complete its production. That file totals 296 pages; of those, 247 pages are redacted. Most of the redacted pages are redacted in full. A true and correct copy of the file DOI provided, which indicates that the Office of Professional Responsibility labeled its investigation Case No. NP22032305, is attached here as Exhibit G.

39.    The letter stated that the records were redacted in accordance with 5 U.S.C. §§ 552(b)(6) ("FOIA Exemption 6") and 552(b)(7)(C) ("FOIA Exemption 7").

40.     On October 4, 2022, The Intercept appealed DOI's July 15, 2022 partial denial. A true and correct copy of The Intercept's letter of appeal is attached here as Exhibit H.

41.     Also on October 4, 2022, DOI acknowledged receipt of the appeal and assigned it number A-2023-002. Attached as Exhibit I is a true and correct copy of DOI's acknowledgment.

42.     On October 11, 2022, Mr. Devereaux wrote to NPS and asked if Office of Professional Responsibility Case No. NP22032305 had been closed, and if it had, what the finding of the investigation was. A true and correct copy of that email is attached here as Exhibit J.

43.     On November 29, 2022, NPS responded and stated that the investigation was complete, and "determined no hunting took place inside the park." A true and correct copy of that email is attached here as Exhibit K.

44.     On August 21, 2023, DOI affirmed NPS's decision to grant in part and deny in part the Request. Attached as Exhibit L is a true and correct copy of DOI's decision letter.

45.     DOI and NPS have not processed any further records, and The Intercept has not received any further response or communication from DOI or NPS.

46.     Because The Intercept has appealed Defendants' determination regarding the Request, and DOI has affirmed that determination, 5 U.S.C. § 552(a)(6)(A)(ii), The Intercept is "deemed to have exhausted [its] administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i).

**CAUSE OF ACTION**
**(Violation of Freedom of Information Act)**
**5 U.S.C. § 552(a)**
**Against All Defendants**

47.     The Intercept incorporates the above paragraphs as if set forth fully herein.

48.     The Intercept has a legal right under FOIA to obtain the agency records it requested in the Request. DOI and NPS have functionally withheld numerous records by redacting large portions of them based on the improper invocation of statutory exemptions that do not apply here.

49.     Defendants' steadfast failure to make promptly available the records sought by the Request, including by producing heavily redacted records, violates FOIA, 5 U.S.C. §§ 552(a)(3) and (a)(6), and applicable regulations promulgated thereunder.

50.     5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to The Intercept because Defendants continue to flout FOIA and improperly withhold agency records. Because Defendants' refusal to produce records responsive to the Request prevents The Intercept from educating the public about the nature of NPS's investigation into the shooting of wolf 1233, The Intercept will continue to suffer irreparable injury from Defendants' withholding of government documents responsive to The Intercept's Request in defiance of FOIA mandates.

51.     28 U.S.C. § 2201 authorizes declaratory relief because an actual and justiciable controversy exists regarding Defendants' improper withholding of agency records in violation of FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs The Intercept Media, Inc. and Ryan Devereaux respectfully request that the Court award it the following relief:

A.     Enter judgment that Defendants' unlawful withholding of the records requested violates FOIA;

B.     Enter an order requiring each Defendant to immediately release any and all responsive and not otherwise exempt records to Plaintiffs;

C.     Award Plaintiffs their reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

D.     Grant such further relief as the Court may deem just and proper.

Dated: New York, New York
      December 15, 2023

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ John M. Browning*
    John M. Browning

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 402-4072
jackbrowning@dwt.com

Thomas R. Burke (*pro hac vice forthcoming*)
Sarah E. Burns (*pro hac vice forthcoming*)
DAVIS WRIGHT TREMAINE LLP
50 California Street
San Francisco, CA 94111
Phone: (415) 276-6500
thomasburke@dwt.com
sarahburns@dwt.com

*Counsel for Plaintiffs*
*The Intercept Media, Inc., and Ryan Devereaux*