UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE INTERCEPT MEDIA, INC. and RYAN
DEVEREAUX,

                                Plaintiffs,

                    -v-

NATIONAL PARK SERVICE and U.S.
DEPARTMENT OF THE INTERIOR

                                Defendants.

23 Civ. 10922 (PAE)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2748
E-mail: dominika.tarczynska@usdoj.gov

DOMINIKA TARCZYNSKA
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ..............................................................................................................2

STANDARD OF REVIEW ................................................................................................5

ARGUMENT ..................................................................................................................6

I.      EXEMPTION 6 AND 7(C) LEGAL STANDARDS ...........................................7

II.     NPS PROPERLY WITHHELD PORTIONS OF THE INVESTIGATIVE FILE
        UNDER FOIA EXEMPTIONS 6 AND 7(C) ....................................................8

        A.      The Investigative File is the Type of Document to Which Exemptions 6
                and 7(C) Apply ......................................................................................8

        B.      Disclosure Would Impact Substantial Privacy Interests........................10

                1.      Identities of Subjects, Witnesses and Third-Parties.................11

                2.      Details that Would Allow Identification of Individuals ............13

                3.      Details of Conduct Under Investigation ..................................15

        C.      Plaintiffs Have Not Identified a Public Interest that Outweighs Those
                Substantial Privacy Interests ................................................................17

        D.      NPS Complied with FOIA's Segregability Requirement ......................21

CONCLUSION................................................................................................................23

i

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*A. Michael's Piano, Inc. v. FTC,*
   18 F.3d 138 (2d Cir. 1994)...................................................................................... 7

*Am. Civil Liberties Union v. U.S. Dep't of Justice,*
   252 F. Supp. 3d 217 (S.D.N.Y. 2017)................................................................... 21

*Am. Civil Liberties Union v. U.S. Dep't of Justice,*
   655 F.3d 1 (D.C. Cir. 2011)................................................................................... 11

*Alirez v. NLRB,*
   676 F.2d 423 (10th Cir. 1982) .............................................................................. 22

*Am. Civil Liberties Union v. Dep't of Def.,*
   389 F. Supp. 2d 547 (S.D.N.Y. 2005)..................................................................... 8

*Amnesty Int'l USA v. CIA,*
   728 F. Supp. 2d 479 (S.D.N.Y. 2010)................................................................... 21

*Assoc. Press v. U.S. Dep't of Def.,*
   554 F.3d 274 (2d Cir. 2009)..................................................................................... 8

*Assoc. Press v. U.S. Dep't of Justice,*
   549 F.3d 62 (2d Cir. 2008)............................................................................... 7, 17

*Associated Press v. U.S. Dep't of Justice,*
   No. 06 Civ. 1758 (LAP), 2007 WL 737476 (S.D.N.Y. Mar. 7, 2007) ..................... 8

*Bast v. U.S. Dep't of Justice,*
   665 F.2d 1251 (D.C. Cir. 1981).............................................................................. 16

*BuzzFeed Inc. v. U.S. Dep't of Justice,*
   2022 WL 2223124 (S.D.N.Y. June 21, 2022) ........................................... 10, 16, 21

*BuzzFeed, Inc. v. U.S. Dep't of Just.,*
   2019 WL 1114864 (S.D.N.Y. Mar. 11, 2019) ....................................................... 18

*Carney v. U.S. Dep't of Justice,*
   19 F.3d 807 (2d Cir. 1994)....................................................................................... 6

*Conti v. U.S. Dep't of Homeland Sec.*,
   2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ........................................................ 13

*Cook v. Nat'l Archives & Records Admin.*,
   758 F.3d 168 (2d Cir. 2014) ...................................................................................... 9

*Cotton v. Adams*,
   798 F. Supp. 22 (D.D.C. 1992) ................................................................................ 14

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ........................................................................................................ 6

*Doherty v. U.S. Dep't of Justice*,
   775 F.2d 49 (2d Cir. 1985) ...................................................................................... 21

*FBI v. Abramson*,
   456 U.S. 615 (1982) .................................................................................................... 7

*Ferrigno v. U.S. Dep't of Homeland Sec.*,
   2011 WL 1345168 (S.D.N.Y. Mar. 29, 2011) ..................................................... 9, 12

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990) ................................................................................ 11

*Germosen v. Cox*,
   1999 WL 1021559 (S.D.N.Y. Nov. 9, 1999) .......................................................... 11

*Horvath v. U. S. Secret Serv.*,
   419 F. Supp. 3d 40 (D.D.C. 2019) ..................................................................... 13, 22

*Jefferson v. U.S. Dep't of Justice*,
   284 F.3d 172 (D.C. Cir. 2002) .............................................................................. 9, 10

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) .................................................................................................... 6

*Judicial Watch, Inc. v. Nat. Archives & Records Admin.*,
   876 F.3d 346 (D.C. Cir. 2017) ................................................................................ 15

*Kearns v. FAA*,
   312 F. Supp. 3d 97 (D.D.C. 2018) .......................................................................... 13

*Kimberlin v. U.S. Dep't of Justice*,
   139 F.3d 944 (D.C. Cir. 1998) ................................................................................ 16

*Long v. OPM*,
    692 F.3d 185 (2d Cir. 2012)..................................................................................... 5, 11

*Multi Ag Media LLC v. Dep't of Agric.*,
    515 F.3d 1224 (D.C. Cir. 2008) ............................................................................. 7, 11

*N.Y. Legal Assistance Grp. v. BIA*,
    401 F. Supp. 3d 445 (S.D.N.Y. 2019) ......................................................................... 6

*N.Y. Times Co. v. U.S. Dep't of Justice*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012)......................................................................... 6

*N.Y. Times Co. v. F.B.I.*,
    2023 WL 5955843 (S.D.N.Y. Sept. 13, 2023).................................................... 13, 15

*Nat'l Archives & Records Admin. v. Favish*,
    541 U.S. 157 (2004)........................................................................................ 17, 18, 19

*Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*,
    849 F. Supp. 2d 13 (D.D.C. 2012) ....................................................................... 14, 22

*NRDC v. Dep't of Interior*,
    73 F. Supp. 3d 350 (S.D.N.Y. 2014)............................................................................ 5

*NRDC v. EPA*,
    403 F. Supp. 3d 270 (S.D.N.Y. 2019)........................................................................ 21

*Perlman v. U.S. Dep't of Justice*,
    312 F.3d 100 (2d Cir. 2002)................................................................... 10, 11, 15, 20

*Perez v. U.S. Immigr. & Customs Enf't*,
    2020 WL 5362356 (S.D.N.Y. Sept. 8, 2020)............................................................. 13

*Radcliffe v. IRS*,
    536 F. Supp. 2d 423 (S.D.N.Y. 2008)......................................................................... 9

*Roth v. U.S. Dep't of Justice*,
    642 F.3d 1161 (D.C. Cir. 2011) ................................................................................. 11

*Stern v. FBI*,
    737 F.2d 84 (D.C. Cir. 1984)............................................................................... 20, 21

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ........................................................................... 21, 22

*Thomas v. Off. of U.S. Att'y for E. Dist. of N.Y.*,
   928 F. Supp. 245 (E.D.N.Y. 1996) ................................................................... 16, 17

*U.S. Dep't of Defense v. Fed. Labor Relations Auth.*,
   510 U.S. 487 (1994)........................................................................................ 8, 17

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989)..................................................................................... 7, 17, 18

*U.S. Dep't of State v. Washington Post Co.*,
   456 U.S. 595 (1982).......................................................................................... 7, 9

*Washington v. U.S. Dep't of Just.*,
   746 F.3d 1082 (D.C. Cir. 2014) ............................................................................ 15

*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009)..................................................................................... 6

*Wood v. FBI*,
   432 F.3d 78 (2d Cir. 2005).......................................................................... 9, 10, 19

**<u>Statutes</u>**

5 U.S.C. § 552............................................................................................... *passim*

Defendants the National Park Service ("NPS") and the U.S. Department of the Interior ("DOI" or the "Department")[1] (collectively "Defendants" or the "Government"), by their attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This matter relates to a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the disclosure of NPS investigatory records related to an investigation conducted by NPS Office of Professional Responsibility ("NPS OPR") of potential misconduct by low-level personnel at one of the four law enforcement ranger districts in Yellowstone National Park (the "Park"). Specifically, the allegations related to a hunt that resulted in a wolf being killed in an area just outside the Park boundary called Beattie Gulch. Based on the privacy interests of those under investigation, those who provided information during the course of the investigation, and those whose conduct was discussed during the course of the investigation, NPS concluded that much of the investigative file responsive to the FOIA Request should be withheld pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (b)(7)(C), which prevent disclosure of information that would constitute an unwarranted invasion of personal privacy.

The privacy interests of individuals discussed in such internal agency investigative files, including government employees who are the target of the investigation and the witnesses who provided information during the course of the investigation, are well recognized. Here, the conduct at issue took place in a small government office and a small nearby community, in which there are

_____

[1] NPS is a component of DOI and is not a separate agency, accordingly only DOI is a proper defendant under the Freedom of Information Act ("FOIA"). However, for purposes of this motion, the term "Defendants" will be used to refer to both DOI and NPS.

strong feelings about wolves and wolf hunting.  Thus, DOI reasonably concluded that disclosure

of the withheld information could expose the individuals involved to harassment, embarrassment,

unnecessary questioning, possible interference with official duties, and reprisals, and could further

discourage future participation in internal investigations.  Moreover, due to the size of the NPS

office and the nearby community, simply redacting the names of the individuals involved would

be insufficient to protect their privacy.  Plaintiffs have not articulated any countervailing

cognizable public interest in the release of the information that would outweigh these strong

privacy interests.

Accordingly, as further set out below, the Court should grant Defendant's motion and enter

judgment in their favor.

## BACKGROUND

### A.  The FOIA Request

At issue in this action is a FOIA request that Plaintiff Ryan Devereaux, a reporter affiliated

with Plaintiff The Intercept Media, submitted to NPS on June 20, 2022.  *See* Declaration of

Nicholas Banco ("Banco Decl.") ¶ 6.  The request sought the following:

> On January 30, 2022, a wolf that was collared and studied by Yellowstone National
> Park staff was shot and killed outside park boundaries in Southwest Montana, near
> an area known as Beattie Gulch. The individual who shot and killed this animal was
> a National Park Service employee. The National Park Service staff conducted an
> investigation into this incident and the conduct of its employee. I am seeking all
> files created by the National Park Service in conjunction with this investigation.

*Id.* Ex. A (the "FOIA Request") at 2.

In this request, Plaintiffs asserted that release of the materials was in the public interest

because they are relevant to two ongoing deliberative processes: (1) "the ongoing formulation of

regulations in Montana for the state's 2022 wolf hunting season" and (2) the "ongoing review by

the Department of the Interior concerning the potential resisting [sic] of wolves in the Northern

2

Rockies under the Endangered Species Act, which was launched in part in response to the nature of Montana's 2021 wolf hunting – including concern over incidents like the one at the center of this request." *Id.* at 3.  The request also sought expedited processing.  *See id.* at 1, *see also* Banco Decl. ¶ 5.

On June 21, 2022, NPS denied the request for expedited processing and indicated that it expected to provide a determination by July 20, 2022.  *Id.* ¶ 7.  On July 15, 2022, NPS provided its response and granted in part and denied in part the FOIA Request.  *Id.* ¶ 8 & Ex. C.  Along with the response letter, NPS produced one file, totaling 296 pages of responsive material, portions of approximately 247 pages were withheld in whole or in part under Exemptions 6 and 7(C) of the FOIA.  *See* Banco Decl. ¶ 8.  Plaintiffs appealed the withholdings determination, and the DOI FOIA Appeals Office denied Plaintiffs' appeal on August 21, 2023.  *Id.* ¶ 9.

On December 15, 2023, Plaintiffs filed the instant action challenging NPS's withholding of material from its FOIA response.  *See* ECF No. 1 ("Compl.").

During the course of this litigation, the NPS FOIA Officer re-reviewed the withheld material, and determined that additional material could be released as it would not reasonably be expected to constitute an unwarranted invasion of personal privacy.  *See* Banco Decl. ¶¶ 36-37.  A revised released removing these redactions was provided to Plaintiff's counsel on May 23, 2024. *Id.* ¶ 38 & Ex. E.

Defendant now moves for summary judgment as to the remaining withholdings.

**B.  The Investigative File**

The documents at issue in this litigation are contained in a 296-page investigative file related to an internal investigation conducted by the NPS OPR in response to a complaint received by NPS OPR on February 10, 2022, alleging misconduct involving one of the four law enforcement

offices in Yellowstone National Park. *Id.* ¶¶ 10, 12 (referring to herein as the "Investigative File"). Specifically, the incident at issue in the investigation, which involved a Park law enforcement officer, occurred on January 20, 2022, and related to a wolf hunted and killed near the Park boundary at an area called Beattie Gulch, adjacent to the town of Gardiner, Wyoming. *Id.* ¶¶ 10, 12.

The particular Yellowstone National Park Office at issue in the investigation was the NPS Mammoth (Northern District) Law Enforcement Office, which is one of the four Ranger Districts located within the Park. *See* Banco Decl. ¶ 12. At any given time, its staff consisted of approximately seven individuals working in the Law Enforcement Office, along with approximately six additional Justice Center staff who were also stationed in Mammoth. *Id.* Just outside the Park boundary, is the town of Gardiner, Montana, which is approximately 4.8 miles from the Mammoth Office. *Id.* Gardiner is a community of approximately 700-800 people, and NPS law enforcement staff from the Mammoth Office are frequently called upon to respond to the community of Gardiner in a mutual aid capacity as there are no local county deputy sheriffs based in the area, and the County Sheriff's Office is based at the county seat, 52 miles away. *Id.* Beattie Gulch, where the wolf hunt at issue in the investigation was alleged to have culminated, is located outside the Park adjacent to Gardiner. *Id.* While the NPS OPR investigation ultimately concluded that no hunting occurred within the Park, those findings did not themselves address all of the misconduct claims at issue in the NPS OPR investigation and report. *Id.* ¶ 11.

As detailed in the *Vaughn* index attached as Exhibit D to the Declaration of Nicholas Banco, the following categories of information were redacted from NPS's production of the Investigative File:

- Transcripts of interviews conducted in person or by phone with witnesses and subjects, including notes and photographs provided by witnesses.

- The Report of Investigation: a multi-section narrative by the NPS OPR investigator describing the specific allegations of misconduct, summarizing the course of the investigation, the evidence, and its conclusions.

- Four Investigative Activity Reports: narratives by the NPS OPR investigator summarizing interviews with witnesses and/or subject(s), including direct quotation and paraphrases from interviews, and evidence provided by witnesses.

- Images and records of communications from NPS cellphones.

- Citations to specific regulations and code of conduct sections, the alleged violation of which were the subject of the misconduct investigation.

- Documents signed by witnesses and/or subjects describing specific circumstances of witnesses and/or subject(s).

*See* Banco Decl. ¶ 15. These documents were withheld in whole or in part pursuant to FOIA Exemptions 6 and 7(C), because NPS concluded that the release of this withheld information would impair the privacy interests of the individuals mentioned in the investigation file, and that those privacy interest outweighed the limited or nonexistent public interest in the release of that material. *See id.* ¶¶ 31-33.

## STANDARD OF REVIEW

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *NRDC v. Dep't of Interior*, 73 F. Supp. 3d 350, 355 (S.D.N.Y. 2014) (quotation marks omitted). "In resolving summary judgment motions in a FOIA case, a district court proceeds primarily by affidavits in lieu of other documentary or testimonial evidence." *Long v. OPM*, 692 F.3d 185, 190

(2d Cir. 2012). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing . . . that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).

Summary judgment as to the applicability of a FOIA exemption is "warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (quotation marks and citations omitted). "Affidavits submitted by an agency are accorded a presumption of good faith," and a court may award summary judgment if the affidavits provided by the agency are "adequate on their face." *Carney*, 19 F.3d at 812 (quotation marks omitted). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner*, 592 F.3d at 73 (quotation marks and citations omitted).[2]

## ARGUMENT

"Upon request, FOIA mandates disclosure of records held by a federal agency, unless the documents fall within enumerated exemptions." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001) (citations omitted). While FOIA is intended to promote government transparency, the FOIA exemptions are "intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). FOIA thus balances

---

[2] Courts in this district have deemed the submission of statements pursuant to Local Rule 56.1 to be unnecessary in FOIA matters. *See, e.g.*, *N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) ("The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." (brackets and quotation marks omitted)); *accord N.Y. Legal Assistance Grp. v. BIA*, 401 F. Supp. 3d 445, 449 (S.D.N.Y. 2019). In accordance with this practice, the Government has not submitted a Rule 56.1 statement in this matter.

"the public's right to know and the government's legitimate interest in keeping certain information confidential." *Assoc. Press v. U.S. Dep't of Justice*, 549 F.3d 62, 64 (2d Cir. 2008) (internal quotation marks omitted). The exemptions to disclosure under FOIA "reflect Congress' recognition that releasing certain records might prejudice legitimate private or governmental interests." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994) (citing *FBI v. Abramson*, 456 U.S. 615, 621 (1982)).

In this case, the government has properly withheld portions of the Investigative File pursuant to FOIA Exemptions 6 and 7(C), both of which protect from disclosure material whose release would constitute an invasion of personal privacy.

## I.   EXEMPTION 6 AND 7(C) LEGAL STANDARDS

Exemption 6 exempts from disclosure information from personnel, medical, or other similar files where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co*., 456 U.S. 595, 599 (1982).

"The privacy interests protected by the exemptions to FOIA are broadly construed," and "embody the right of individuals 'to determine for themselves when, how, and to what extent information about them is communicated to others.'" *Assoc. Press v. U.S. Dep't of Justice*, 549 F.3d 62, 65 (2d Cir. 2008) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 764 n.16 (1989)). To be protected, the individual's privacy interest in the information's nondisclosure need only be more than *de minimis*. *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008). If a protected privacy interest is found, the court must then consider whether the "public interest in disclosure outweighs the individual privacy concerns." *Id.* at 1230 (internal quotation marks omitted). But the "only relevant 'public

interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of FOIA,' which is contribut[ing] *significantly* to public understanding *of the operations or activities of the government.*" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (first emphasis added).

FOIA's Exemption 7(C) is more specific than Exemption 6: it excepts from disclosure records or information compiled for law enforcement purposes where its production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) "is more protective of privacy" than Exemption 6. *Assoc. Press v. U.S. Dep't of Justice*, No. 06 Civ. 1758 (LAP), 2007 WL 737476 at *4 (S.D.N.Y. Mar. 7, 2007). In determining whether personal information is exempt from disclosure under Exemption 7(C), the court must likewise balance the public's need for this information against the individual's privacy interest. *Assoc. Press v. U.S. Dep't of Def.*, 554 F.3d 274, 284 (2d Cir. 2009). However, because of textual differences between Exemptions 6 and 7(C), the standard the government must show to meet Exemption 7(C) is lower than for Exemption 6. *See, e.g.*, *Am. Civil Liberties Union v. Dep't of Def.*, 389 F. Supp. 2d 547, 569 (S.D.N.Y. 2005). First, under Exemption 7(C), the information's release need only be "reasonably [] expected to constitute" an unwarranted invasion of privacy, rather than the more definite "would constitute" such an invasion in Exemption 6. *Id.* Second, the invasion need only be "unwarranted" to meet Exemption 7(C), whereas to meet Exemption 6, the invasion must be "clearly unwarranted." *Id.*

## II.   NPS PROPERLY WITHHELD PORTIONS OF THE INVESTIGATIVE FILE UNDER FOIA EXEMPTIONS 6 AND 7(C)

### A.   The Investigative File is the Type of Document to Which Exemptions 6 and 7(C) Apply

As a threshold matter, NPS reasonably concluded that the Investigative File is the type of record to which both Exemption 6 and 7(C) can be applied. *See* Banco Decl. ¶¶ 23, 26, 27.

In making the determination whether a record is a "personnel" or other "similar file" that qualifies for withholding under Exemption 6, the court "ask[s] whether the records at issue are likely to contain the type of personal information that would be in a medical or personnel file." *Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005). The statutory language concerning files "similar" to personnel or medical files has been interpreted broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from Government records." *Washington Post*, 456 U.S. at 602; *see Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 175 (2d Cir. 2014) ("a record is a 'similar file' if it contains personal information identifiable to a particular person"). The Second Circuit has specifically held that "administrative investigative records" are subject to withholding under Exemption 6. *Wood*, 432 F.3d at 86-87; *see also Ferrigno v. DHS*, No. 09 Civ. 5878 (RJS), 2011 WL 1345168, at *8 (S.D.N.Y. Mar. 29, 2011) ("[R]ecords of ICE's internal investigation containing the names and statements of witnesses . . . and [the plaintiff's] [s]upervisor are clearly similar files for the purpose of Exemption 6."). Here, NPS reasonably concluded that the Investigative File contains information that applies to particular individuals and is thus subject to Exemption 6.

The documents comprising the Investigative File likewise satisfy the threshold requirement under Exemption 7(C) that the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). In this analysis, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and quotation marks omitted). "Law enforcement purposes include both civil and criminal proceedings." *Radcliffe v. IRS*, 536 F. Supp. 2d 423, 435-36 (S.D.N.Y. 2008) (collecting cases), *aff'd*, 328 F. App'x 699 (2d Cir. 2009) (summary order). Agency records

are considered to be "compiled for law enforcement purposes" if "the investigatory activity that gave rise to the documents is related to the enforcement of federal laws, and there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Jefferson*, 284 F.3d at 177 (quotation marks omitted).  Records of internal investigations have been found to be law enforcement records within the bounds of Exemption 7(C).  *See, e.g., Pearlman v. U.S. Dep't of Justice*, 312 F.3d 100, 105 (2d Cir. 2002) (DOJ Office of the Inspector General ("OIG") report of investigation concerning investigation of misconduct in the operation of an Immigration and Naturalization Service program found to be compiled for law enforcement purposes); *BuzzFeed Inc. v. U.S. Dep't of Justice*, 21-cv-7533 (JGK), 2022 WL 2223124, at *3 (S.D.N.Y. June 21, 2022) (DOJ OIG report related to investigation of sexual harassment allegations by Former DOJ Executive Officer was law enforcement record), *aff'd,*  2023 WL 4246103 (2d Cir. June 29, 2023)

Here, "NPS OPR's mission is to uphold the best interests and confidence of the public and NPS employees by conducting independent investigations of alleged NPS law enforcement officer misconduct." *See* Banco Decl. ¶ 13.  The type of allegations investigated by NPS OPR include accusations concerning violations standards of "imposed by criminal or civil law and applicable rules of professional conduct or department policies."  *Id.* ¶ 14.  At issue here, NPS OPR's investigation was in response to an allegation of misconduct involving one of the four ranger regions within Yellowstone National Park, and whether that conduct violated certain department polices or other laws.  *See id.* ¶ 10.  Thus, the relevant records were compiled for law enforcement purposes sufficient to satisfy Exemption 7(C)'s threshold requirement.

### B.    Disclosure Would Impact Substantial Privacy Interests

"The privacy side of the balancing test is broad and encompasses all interests involving the individual's control of information concerning his or her person." *Wood*, 432 F.3d at 88 (quotation marks omitted).  "The balancing analysis for FOIA Exemption 6 requires that [the Court] first

determine whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest." *Long*, 692 F.3d at 191 (quotation marks omitted).  In this context, a "substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008).  Indeed, "the bar is low" for demonstrating a privacy interest recognized by FOIA, and thus even a modest privacy interest triggers a balancing analysis. *Long*, 692 F.3d at 191.  Unlike Exemption 6, which allows nondisclosure only when a document would constitute a "clearly" unwarranted invasion of privacy, Exemption 7(C) "is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quotation marks omitted).

### 1.       Identities of Subjects, Witnesses and Third-Parties

The privacy interest of witnesses, potential subjects, and third parties identified in law enforcement records is substantial, and satisfies both Exemption 6 and 7(C) standards. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) ("not only the targets of law-enforcement investigations, but also witnesses, informants, and investigating agents have a substantial interest in ensuring that their relationship to the investigations remains secret." (ellipsis and quotation marks omitted)); *Germosen v. Cox*, No. 98 Civ. 1294 (BSJ), 1999 WL 1021559, at *15 (S.D.N.Y. Nov. 9, 1999) ("the privacy interests of witnesses and investigative agents identified in agency documents are given heavy weight").  "[T]he mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990).  Those privacy interests apply in the context of internal agency investigations of government employee conduct. *See Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106-07 (2d Cir. 2002) (recognizing that "witnesses and third parties to the [report of investigation] . . . possess strong privacy interests, because being identified as part of a

11

law enforcement investigation could subject them to 'embarrassment and harassment' . . . and that a government employee who is the subject of an investigation possesses a strong privacy interest in avoiding disclosure of the details of the investigation"), *vacated*, 541 U.S. 970 (2004), *aff'd on remand*, 380 F.3d 110 (2d. Cir. 2004); *Ferrigno v. U.S. Dep't of Homeland Sec.*, No. 09 CIV. 5878 RJS, 2011 WL 1345168, at *8 (S.D.N.Y. Mar. 29, 2011) ("Government investigators and witnesses in internal investigations . . . possess strong privacy interests, as the disclosure of their identities may result in harassment or embarrassment.").

Here, NPS reasonably concluded that the withheld information in the Investigative File implicates the privacy interests of those being investigated, those providing information during the course of the investigation, those about whom information was provided during the course of the investigation, and the investigators conducting the investigation. *See* Banco Decl. ¶¶ 27-29. As explained in the accompanying declaration, "there were strong feelings within the community about wolves and wolf hunting in general, and the incident that precipitated the misconduct claims being investigated by NPS [OPR] in particular." *Id.* ¶ 18. As such, it was reasonable for NPS to conclude that identification of individuals in connection with the Investigatory File could expose the individuals involved to harassment, embarrassment, unnecessary questioning, possible interference with official duties, and reprisals. *Id.* ¶ 29. Moreover, NPS concluded that such potential consequences could further discourage future participation by employees, witnesses and third-parties in internal investigations. *Id.* Accordingly, NPS reasonably concluded that disclose of the identities of the individuals mentioned in the Investigative File would constitute an invasion of those individuals' privacy interests, meeting both the Exemption 6, and the less stringent Exemption 7(C) standard.

## 2.      Details that Would Allow Identification of Individuals

The mere redaction of names or contact information would not adequately protect those privacy interested in circumstances such as those at issue here where the individuals are part of a small office and/or community and disclosing the witnesses' "knowledge about facts and events . . . would allow those familiar with the events to readily identify these individuals." *Horvath v. United States Secret Serv.,* 419 F. Supp. 3d 40, 46–48 (D.D.C. 2019).  "While [the privacy] interest can be triggered by the identification of a person by name, it can also be triggered by identifying details of an event." *N.Y. Times Co. v. F.B.I.*, No. 21 CIV. 10888 (NRB), 2023 WL 5955843, at *6 (S.D.N.Y. Sept. 13, 2023) (accepting explanation in FBI's declaration that release of withheld information would allow identification of individuals based on information from other sources); *see also Kearns v. FAA*, 312 F. Supp. 3d 97, 111 (D.D.C. 2018) (upholding withholding of information that "would associate third parties with internal agency investigations and threatens to identify them as witnesses to or victims of alleged workplace misconduct").

In *Perez v. U.S. I.C.E.*, the Court found the entirety of witness statements in an ICE OPR investigation file to implicate privacy interests based on the agency's explanation that "because the witness statements 'relate to a small number of ICE personnel who are known to each other and to Plaintiff,' [the FOIA requestor] 'is likely to be able to easily ascertain the identities of these ICE employees based on the details provided in those interviews,' and therefore disclosure of these records 'risks disclosing the identities of these individuals who made the statements and also other agency personnel or third parties.'" *Perez v. U.S. Immigr. & Customs Enf't*, No. 19 CIV. 3154 (PGG), 2020 WL 5362356, at *6 (S.D.N.Y. Sept. 8, 2020) (internal citations omitted); *see also Conti v. U.S. Dep't of Homeland Sec.*, No. 12 CIV. 5827 AT, 2014 WL 1274517, at *18 (S.D.N.Y. Mar. 24, 2014) (upholding withholding pursuant to Exemptions 6 and 7(C) "identifying statements made by individuals in furtherance of internal agency investigations and law enforcement

investigations, where those statements could be used to identify the third parties"); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 30–31 (D.D.C. 2012)). ("'[W]hile the redaction of an individual's name may be sufficient to protect his identity and privacy from the public, it may not be sufficient to protect him in the smaller community of his school or work.'") (citation omitted); *Cotton v. Adams*, 798 F. Supp. 22, 27–28 (D.D.C. 1992) ("Even if all identifying information is redacted, the requester will associate these two individuals with the remaining material in the Inspector General's reports, thereby causing the same type of embarrassment and potential for retribution which Exemption 6 endeavors to avoid.").

Similarly here, NPS reasonably concluded that redaction of merely the names or contact information of those individuals would be insufficient to protect their privacy because "the events at issue in the investigation took place in a very small workplace and community in which many of the individuals mentioned in the file knew each other well and interacted on a routine basis." Banco Decl. ¶ 17; *see also id.* ¶ 28. The NPS Office at issue had approximately seven staff in the Law Enforcement Office, and approximately additional six Justice Center personnel. *Id.* ¶ 12. While the nearby community of Gardiner, Wyoming, where the events under investigation were alleged to have occurred, had only 700 to 800 residents. *Id.* Thus, it was reasonable for NPS to conclude that the individuals in that office and neighboring community "would be very likely to be familiar with identifying details of each other's life and work routines, as well as identifying details such as particular habits of speech." *Id.* ¶ 17. Based on these factors, it was reasonable for NPS to conclude that statements provided by individuals during the course of the investigation (including transcripts, written statements, and summaries of such information), photographs provided by witnesses, documents signed by witnesses, records of communications from a NPS cellphone issued to an agency employee, and images obtained from an NPS cellphone issued to an

agency employee all contained information that could allow others in the small community to ascertain the individuals' identities, and that disclosure would constitute an invasion of their privacy interests because it would potentially subject them to stigmatization, retaliation or harassment. *See* Banco Decl. ¶¶ 18, 28; *see also e.g., id.* Ex. D ("*Vaughn* Index") at 00002, 00003-4, 00005, 00007, 0008, 00009-24, 00025-26, 00082-89, 00090-153, 00154-58, 00159-160, 00161-65, 00166-209, 00210-11, 00212-15, 00216-49, 00250-53, 00254-75, 00276-79, 00280-96, 00296-97.[3]   Accordingly, NPS reasonably concluded that disclosure would constitute an unwarranted invasion of privacy under Exemption 6, and the less stringent Exemption 7(C) standard.

### 3.    Details of Conduct Under Investigation

Not only do the privacy interests protected by Exemption 6 and Exemption 7(C) apply to the names and information that could identify individuals discussed in the Investigative File, they also apply to the details of the investigation, including the specific laws and regulations that the investigation was looking at.   As courts have recognized, "[a] 'government employee who is the subject of an investigation possesses a strong privacy interest in avoiding disclosure of *details of the investigation*." *N.Y. Times Co. v. FBI*, 2023 WL 5955843, at *6 (emphasis added) (quoting *Perlman*, 312 F.3d at 107).   There is an "interest in keeping secret the *fact* that [the employee] was under investigation" and "a second, distinct privacy interest in the *contents* of the investigative files." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.,* 746 F.3d 1082, 1092 (D.C. Cir. 2014) (emphases in original); *see also Judicial Watch, Inc. v. Nat. Archives & Records Admin.,* 876 F.3d 346, 349 (D.C. Cir. 2017) (recognizing that even though the existence of the Independent Counsel's investigation of a former first lady was "public knowledge," she "retains a distinct

---

[3] Citations to the *Vaughn* Index are to the line item identifying the bates number on which the withheld information appears.

privacy interest in the *contents* of the investigative files." (internal quotation marks omitted, emphasis in original)); *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998) (recognizing that even when "the public already knows who [the employee under investigation] is, what he was accused of, and that he received a relatively mild sanction[.,] [h]e still has a privacy interest . . . in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment— and perhaps, too, an interest in preventing hitherto speculative press reports of his misconduct from receiving authoritative confirmation from an official source"). "[A]lthough government officials . . . may have a somewhat diminished privacy interest, they do not surrender all rights to personal privacy when they accept a public appointment." *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998) (quotation marks omitted). "An individual's privacy interest is particularly pronounced where disclosure could lead to embarrassment or retaliation. This is true even when an individual is alleged to have committed substantial misconduct." *BuzzFeed Inc.*, 2022 WL 2223124, at *3 (internal citations omitted).

Here, while certain information about the investigation may be publicly known, or the subject of community and/or media speculation, that only reenforces the need to protect the privacy interests of the individual(s) that were the subject of the investigation regarding the details of what was under investigation. *See, e.g., Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981) (finding that previous publicity amounting to "journalistic speculation" cannot "vitiate the FOIA privacy exemption for official information"); *Thomas v. Off. of U.S. Att'y for E. Dist. of N.Y.*, 928 F. Supp. 245, 250 n.8 (E.D.N.Y. 1996) (holding that despite public disclosure of some information about attorney's connection with crime family, he still retains privacy interests in preventing further disclosure).

On this basis, NPS reasonably concluded the disclosure of the narrative descriptions of the alleged misconduct that was the subject of the investigation, and the internal and external regulations and policies at issue, would impair the privacy interests of the subject(s) of the investigation. *See, e.g., Vaughn* Index at 00002, 00003-4, 00025-26, 00075-76, 00077, 00080-81. As NPS explained in the *Vaughn* index, "[d]escription of alleged misconduct could, along with personal information in other parts of investigatory file would, particularly when combined with information already in the public record, serve to reveal the identity of subject(s), and associate them with specific acts of alleged misconduct that were being investigated." *See, e.g., id.* at 00003-4. Disclosure of such information could subject the individual(s) to stigma, personal and professional embarrassment, as well as potential harassment. *Id.* Accordingly, NPS reasonably concluded that disclosure would constitute an unwarranted invasion of privacy under Exemption 6, and the less stringent Exemption 7(C) standard.

### C.   Plaintiffs Have Not Identified a Public Interest that Outweighs Those Substantial Privacy Interests

Plaintiffs have not met their "burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA." *Associated Press*, 549 F.3d at 66. This requires a showing that (1) "the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." And (2) that "the information is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 158 (2004). The "only relevant 'public interest in disclosure' to be weighed" in the balance against individuals' privacy interest "is the extent to which disclosure would serve the 'core purpose of the FOIA,'" which is 'contributing significantly to public understanding *of the operations or activities of the government.*'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. at 495 (brackets omitted) (quoting *Reporters Comm.*, 489 U.S. at 775; emphasis in original). This

purpose is not furthered by disclosure of information that "reveals little or nothing about an agency's own conduct." *Reporters Comm.*, 489 U.S. at 773. "If the requester asserts that the reason for the disclosure is to uncover government impropriety or negligence, 'the requester must establish more than a bare suspicion in order to obtain disclosure.' Rather, 'the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" *BuzzFeed, Inc. v. U.S. Dep't of Just.*, No. 17-CV-7949 (VSB), 2019 WL 1114864, at *4 (S.D.N.Y. Mar. 11, 2019) (quoting *Favish*, 541 U.S. at 174).

In the FOIA Request, Plaintiffs claimed that the release of records was relevant to two agency deliberations: (1) the "ongoing formulation of regulations in Montana for the state's 2022 wolf hunting season" and (2) "an ongoing review of by the Department of the Interior concerning the potential re[l]isting of wolves in the Northern Rockies under the Endangered Species Act, which was launched in part in response to the nature of Montana's 2021 wolf hunting – including concern over incidents like the one at the center of the request." Banco Decl. Ex. A. In their Complaint, Plaintiffs vaguely repeat those assertions, claiming "these are matters of significant public interest and concern, because wolf hunting in Montana is in general an issue of extraordinary local and national interest, and because the DOI is currently considering re-listing gray wolves under the Endangered Species Act, in part based on the deadly 2021-2022 hunting season." Compl. ¶ 20.

NPS considered Plaintiffs' two arguments regarding how the release of the requested records would serve the public interest, and reasonably concluded that it was not clear how the information in the Investigatory File would contribute to public knowledge about government activities in connection with these two deliberative processes. *See* Banco Decl. ¶ 32. With respect to the first, "[s]etting hunting regulations for the state of Montana, . . . is not a role or responsibility

of the NPS or the Department and the nexus between that State process and the investigatory file was unclear." *Id.*  With respect to the second, "[w]hile listings, de-listings, and re-listings of species under the Endangered Species Act (ESA) are responsibilities of the U.S. Fish and Wildlife Service which is also part of the Department, it [is] also not clear to NPS FOIA how the investigatory file for an internal NPS misconduct investigation involving low-level non-supervisory personnel would let the public know 'what the government was up to' with regard to any potential re-listing of wolves in the Northern Rockies under the ESA." *Id.*

In their Complaint, Plaintiffs now also allege that through the FOIA Request they seek to "shed light on how the investigation determined no wrongdoing, when the only information so far released indicates wolf 1233 was shot outside of permissible hunting hours, and was inside Yellowstone National Park at the time the hunter claims it was killed."  Compl. ¶ 20.  And further assert that they "seek[] to bring transparency to the nature of Office of Professional Responsibility's investigatory process" *Id.*  As a factual matter, this speculation is incorrect.  The investigation determined that the wolf was killed outside the Park. *See* Banco Decl. ¶ 11. Moreover, the NPS OPR investigation addressed more than just the location where the wolf was killed, as it encompassed additional misconduct claims. *Id.*  More fundamentally, Plaintiffs appear to suggest that there was some sort of "government impropriety or wrongdoing" in connection with the NPS OPR investigation, however, Plaintiffs have not put forth any concrete "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" *Favish*, 541 U.S. at 17. "[D]isappointment with the outcome of the [internal agency investigation] is not evidence that the investigators were negligent or biased in the performance of their duties." *Wood*, 432 F.3d at 89.

As Plaintiffs have not met their burden to articulate a public interest cognizable under FOIA, the Court need not reach the balancing of the privacy interest versus the public interest. However, should it reach the balancing test, the relevant factors point against disclosure. In *Perlman*, the Second Circuit posited that in "balancing a government employee's privacy interests against the public's interest in disclosure," a court may weigh certain factors, including:

> (1) the government employee's rank; (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways to obtain the information; (4) whether the information sought sheds light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature.

*Perlman*, 312 F.3d at 107; *see also Stern v. FBI,* 737 F.2d 84, 92-94 (D.C. Cir. 1984) (protecting identities of lower-level employees, who were found to be negligent, but ordering disclosure of identity of higher-level official who knowingly participated in cover-up).  None of the enumerated factors is dispositive, nor is the list of factors exhaustive. *Id.*

Here, on balance, those factors weigh against disclosure.  The information withheld, concerning an internal investigation of alleged misconduct associated with a single incident involving the alleged actions of low-level, non-supervisory employee(s) in a single small office would provide minimal information to the public concerning how NPS or even NPS OPR carries out its responsibilities. *See* Banco Decl. ¶ 31.  This is particularly the case to the extent specific alleged facts and/or violations described in the Report were investigated and found to be unsubstantiated or only partially substantiated.  *Id.* Whatever the minimal cognizable public interest there might be in substantiated misconduct associated with a single incident involving law level employees in a single small office, there is no cognizable public interest in disclosure concerning allegations that, after investigation, are not found to have a factual basis. *Id.*  Moreover, even if this court were to assume that the information sought is related to a job function, courts have found that "where the public interest in their identities is grounded only in a general notion

of public servant accountability, the employees' privacy interest in nondisclosure is paramount and protects their identities from being revealed." *Stern v. F.B.I.*, 737 F.2d 84, 93 (D.C. Cir. 1984). Further, although there are no other ways to obtain this information courts have found that this is not a dispositive factor. *See, e.g., BuzzFeed Inc.,* 2022 WL 2223124 at *6-8 (finding that "the Government is 'the only means of obtaining the desired information" but nevertheless holding that information was properly redacted pursuant to Exemption 7(C)).

      **D.**      **NPS Complied with FOIA's Segregability Requirement**

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

FOIA requires only "reasonable" segregation; thus, "the law is clear that the reasonable segregation requirement of FOIA does not require [an agency] to commit significant time and resources to a task that would yield a product with little, if any, informational value." *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 529 (S.D.N.Y. 2010) (quotation marks omitted); *see Doherty v. U.S. Dep't of Justice*, 775 F.2d 49, 53 (2d Cir. 1985). Moreover, "[n]on-exempt information is not reasonably segregable when it is 'inextricably intertwined' with the exempt information in a document 'such that disclosure would compromise the confidentiality of exempt information that is entitled to protection.'" *NRDC v. EPA*, 403 F. Supp. 3d 270, 286 (S.D.N.Y. 2019) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 252 F. Supp. 3d 217, 227 (S.D.N.Y. 2017)) (brackets omitted); *accord Sussman*, 494 F.3d at 1117.

NPS conducted a line-by-line analysis of the responsive records for segregability purposes, released additional information that it concluded would not implicate any privacy interest, and

concluded that no further segregation could be made without disclosing exempt information.  *See* Banco Decl. ¶¶ 35-38.  As detailed above, due to the nature of the Investigative File and the small size of the office and community to which they pertain, NPS concluded that no portions of the witness statements or summaries thereof could be released without risking the identification of the individuals who provided the statements and therefore cause the harm that FOIA Exemptions 6 and 7(C) were intended to prevent.  *See id.*  ¶¶ 28, 39.

Other courts considering withheld witness statements from internal investigations have concluded that such information is not segregable.  *See Horvath*, 419 F. Supp. 3d at 51 ("Although the [agency] has withheld in full the substance of [agency personnel's] statements to investigators, the [agency] has explained in detail why those statements would reveal 'who said what' and constitute a substantial invasion of privacy that outweighs any public interest in disclosure."); *Nat'l Whistleblower Ctr.*, 849 F. Supp. 2d at 31; *see also Alirez v. NLRB*, 676 F.2d 423, 427-28 (10th Cir. 1982) (concluding that, where the "requested documents relate[d] to a few incidents involving about a dozen people," even with redactions, "these documents would enable [the plaintiff], and others who had specific knowledge of these incidents, to identify readily the informant and persons discussed in each document").

Therefore, the Court should find that NPS properly complied with its duty to segregate exempt from non-exempt information.  *See Sussman*, 494 F.3d at 1116-17.

**CONCLUSION**

The Court should grant Defendants' motion and enter judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure.

Dated: May 23, 2024
       New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:     /s/ Dominika Tarczynska
DOMINIKA TARCZYNSKA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2748
E-mail:dominika.tarczynska@usdoj.gov